**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **CHARLES MITELHAUS** | § |
| | § |
| **V.** | § |
| | §    **Civil Action No.** <u>5:23-cv-753</u> |
| **SUZANNE NIEDERLITZ WYNN, in** | § |
| **her capacity as a Co-Trustee of the** | § |
| **Thomas H. Dungan and Suzanne B.** | § |
| **Dungan 2016 Living Trust and** | § |
| **CULLEN/FROST BANKERS, INC.,** | § |
| **d/b/a FROST NATIONAL BANK** | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW CHARLES MITELHAUS ("Mitelhaus" or "Plaintiff"), and for his cause of action against CULLEN/FROST BANKERS, INC., D/B/A FROST NATIONAL BANK and SUZANNE NIEDERLITZ WYNN, states the following:

**INTRODUCTION**

1.      This is a suit for civil breach of contract (specific performance) and civil fraud. The fraud and breach of contract that is the subject of this suit arose out of the auction of a home in Marfa, Texas that was owned by the Thomas H. Dungan and Suzanne B. Dungan 2016 Living Trust (the "Trust"). Mitelhaus submitted the winning bid of $825,000 in an auction of the Marfa House. Frost refused to allow the sale to close, claiming that it was a trustee of the Trust and its approval was required. However, before the auction, Frost had stated to all participants in a letter included with the auction materials that it had declined to serve as a trustee of the Trust. Frost knowingly misled Mitelhaus (and all participants) about its relationship with the Trust and has prevented Mitelhaus from purchasing the unique Marfa property. Mitelhaus seeks specific performance of the sales contract and to recover his damages.

## PARTIES

2.　　Plaintiff Charles Mitelhaus is an individual domiciled in and residing at 7253 Spring Creek Circle, Niwot, Colorado, 80503.

3.　　Defendant Cullen/Frost Bankers, Inc., d/b/a Frost National Bank in its capacity as Co-Trustee of the Trust ("Frost Trustee") is a Texas State chartered bank authorized to conduct business in the State of Texas.  Frost Bank's main office located at 111 W. Houston, San Antonio, Texas 78205.  Frost may be served with process by service upon its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4.　　Defendant Suzanne N. Wynn, in her capacity as Co-Trustee of the Trust ("Suzanne Trustee") is an individual domiciled in and residing at 31 Intervale Rd., Cranston, RI 02910.  She may be served at that address.

## JURISDICTION

5.　　Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a)(1), because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interests and costs.

## VENUE

6.　　Venue for this action is predicated upon 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district and/or because the property that is the subject of this action is located in this district.

## FACTUAL BACKGROUND

7.　　Mitelhaus set out to purchase an investment property in Marfa, Texas. He heard of an auction set up by Concierge Auctions, LLC DBA Sotheby's Concierge Auctions

("Sotheby's") to sell a house at 1104 N. Alamito St, Marfa, Presidio County, Texas (the "House"). The House is owned by Suzanne N. Wynn and Frost National Bank, Co-Trustees of the Thomas H. Dungan and Suzanne B. Dungan 2016 Living Trust ("Seller"), though Frost's status was not known at the time.

8.     Suzanne Trustee contracted with Sotheby's to conduct an auction of the House. She provided materials to inform interested bidders about various aspects of the House and provided evidence of the trust and of her authority to act on behalf of the trust. Sotheby's set up a virtual data room with this information so the potential bidders could be informed about what they were bidding on.

9.     During Sotheby's due diligence process, it required Suzanne Trustee to provide a copy of the Trust agreement. Seeing that the Trust Agreement called out Frost Trustee as a Co-Trustee with Suzanne Trustee, Sotheby's required Frost Bank to sign documents authorizing the auction to go forward and, generally, to commit to sell the House to the highest bidder.

10.    Rather than have Frost Trustee sign these documents, Suzanne Trustee and Frost Trustee provided a letter, a copy of which is attached as Exhibit A (the "Frost Letter"), which provides confirmation to all readers that Suzanne Trustee "is the sole successor trustee of the Thomas H. Dungan and Suzanne B. Dungan 2016 Living Trust" and that "Frost Bank has declined to serve as Trustee/Co-Trustee." The Frost Letter was from "Norma J. Ayala, Trust Officer, Frost Wealth Advisors". The Frost Letter was placed in the virtual data room along with a copy of the trust.  Mitelhaus viewed both documents in the virtual room during his due diligence.

11.    Having assurance from Frost that it was not serving as Co-Trustee and that Suzanne Wynne was the sole trustee and having Suzanne Trustee join in this representation by

presenting Sotheby's the Frost Letter, Sotheby's conducted the auction with Suzanne Trustee's approval and authority and without any further requirement of the joinder of Frost Trustee.

12.     Being the highest bidder, Mitelhaus won the auction and signed the earnest money contract, a copy of which is attached as Exhibit "B" (the "Contract") as required by the auction terms. Suzanne Trustee also signed the Contract.

13.     Mitelhaus proceeded to the closing in accordance with the terms of the contract and tendered performance by wiring the total sale price and other incidental closing costs required of the buyer to the title company.

14.     Only then did Frost Trustee intervene and refuse to close and execute a deed. Frost was now claiming that the Frost Letter was false, and it was in fact the Co-Trustee. Frost Trustee and Suzanne Trustee failed and refused to comply with the contract and tender a deed to close the sale.

15.     The Contract provides for specific performance and damages in the event of the Seller's breach (at ¶15) and for attorneys' fees (at ¶17).

## CAUSES OF ACTION

### COUNT 1
### FRAUD

16.     On February 6, 2023, Defendant Frost Trustee made the representation in the Frost Letter that that Suzanne Trustee "is the sole successor trustee of the Thomas H. Dungan and Suzanne B. Dungan 2016 Living Trust" and that "Frost Bank has declined to serve as Trustee/Co-Trustee." *See* Exhibit "A." This representation was false when made. Frost Trustee knew that Frost Trustee was, in fact, a trustee of the Trust. Frost Trustee knew that the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth. Frost Trustee misrepresented these facts with the intent that

Plaintiff would act on it.  Plaintiff did rely on the misrepresented facts as presented in the Frost Letter, which he viewed as part of his due diligence during the time period between February 6, 2023 and February 21, 2023, and proceeded to closing under the Contract.  The representations caused Plaintiff an injury.

17.     On February 21, 2023, Defendant Suzanne Trustee represented that she was the sole trustee of the Trust by executing the Contract and/or addendums thereto as the sole trustee of the Trust.  This representation was false when made.  Suzanne Trustee knew that Frost Trustee was, in fact, a trustee of the Trust.  Suzanne Trustee knew that the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth. Suzanne Trustee misrepresented these facts with the intent that Plaintiff would act on it.  Plaintiff did rely on the misrepresented facts as presented in the Contract, and proceeded to closing under the Contract.  The representations caused Plaintiff an injury.

## COUNT 2
## TORTIOUS INTERFERENCE BY DEFENDANT FROST TRUSTEE

18.     Pleading in the alternative, Defendant Frost Trustee tortiously interfered with the Contract.

19.     The Contract (Exhibit "B") is a valid contract between Mitelhaus and the Trust for the sale of the House.

20.     Frost Trustee willfully and intentionally interfered with the Contract by falsely claiming that it was a trustee of the Trust and its approval and signature were necessary, even though it had declined to serve as a trustee before the Contract was executed.

21.     Because of Frost Trustee's interference, Mitelhaus was unable to close on the purchase of the House, causing him actual damages.

## COUNT 3

### <u>BREACH OF CONTRACT – SPECIFIC PERFORMANCE</u>

22.     Mitelhaus and Defendants had a valid enforceable contract – the Contract attached hereto as Exhibit "B."

23.     Defendant Suzanne Trustee had actual authority to execute the Contract on behalf of the Trust, or, in the alternative, had apparent authority to do so based on the statements made in the Frost Letter (Exhibit "A").

24.     Mitelhaus is the proper party to sue for breach of contract.

25.     Mitelhaus performed or tendered performance of his contract obligations, or was excused from so performing.

26.     Defendants breached the contract by failing to close on the sale of the House by the date specified in the Contract as they were obligated to do.

27.     Defendants' breach caused significant monetary damage to Mitelhaus.

28.     In addition, Mitelhaus is entitled to specific performance of the Contract. Because the Contract involves real estate, Mitelhaus has no adequate remedy at law for damages and damages would be inadequate compensation.

### <u>DAMAGES</u>

29.     As set forth above, Mitelhaus is entitled to specific performance of the Contract.

30.     In addition and/or in the alternative, Mitelhaus suffered monetary damages from Defendants' refusal to close on the sale of the House.  Defendants have been offering the House as a short-term rental at the price of $463.00 per day – income Mitelhaus should have been earning since the closing date set forth in the Contract.

## EXEMPLARY DAMAGES

31.     Defendants' conduct was aggravated to the level of fraud, malice, or gross negligence, thereby entitling Plaintiff to exemplary damages.

## ATTORNEYS' FEES

32.     Because of Defendants' wrongful conduct, it has become necessary for the Mitelhaus to retain the undersigned to investigate and pursue these causes of action.  Mitelhaus seeks reasonable attorneys' fees incurred in the prosecution of these claims.  An award of attorneys' fees is authorized by Section 38.001 of the Texas Civil Practice and Remedies Code as well as by ¶17 of the Contract.

## CONDITIONS PRECEDENT

33.     All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## JURY DEMAND

34.     Plaintiff demands a trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Charles Mitelhaus, respectfully requests the following:

1.      Damages in excess of the minimum jurisdictional limits of this Court;

2.      Specific performance of the Contract;

3.      Exemplary damages;

4.      Pre-judgment interest and post-judgment interest;

5.      That Defendants be compelled to pay Plaintiff's costs and attorneys' fees incurred in connection with this action;

6.    Trial by jury of all issues so triable; and

7.    All other and further relief to which Plaintiff may otherwise be entitled.

Respectfully submitted,

OLIVER LAW FIRM

By:    _____

WILLIAM H. OLIVER
State Bar No. 15265200
wholiver@oliverlawfirmsa.com
ERIC A. SCOTT
State Bar No. 24043910
escott@oliverlawfirmsa.com
7898 Broadway, Suite 120
San Antonio, Texas 78209
Telephone:  (210) 820-0082

EXHIBIT "A"



Post Office 2845
Houston, Texas  77252
713.388.7600

February 6, 2023

**Re:**     **Frost Management Agent For Thomas H. Dungan And Suzanne B. Dungan 2016**
          **Living Trust, Suzanne Wynn, As Sole Succ Trustee dated 2/1/2016**

Dear Sir/Madam,

Please let this letter serve as confirmation that Ms. Suzanne Wynn is the Sole Successor Trustee of the Thomas H. Dungan and Suzanne B. Dungun 2016 Living Trust. Please note that Frost Bank has declined to Serve as Trustee/Co-Trustee.

The proceeds of the house in Marfa, TX should be payable to the Thomas H. Dungan and Suzanne B. Dungan 2016 Living Trust.

Please feel free to reach out to me with any questions. I may be reached at 713/388.1102.

Regards,

*Norma J. Ayala*

Norma J. Ayala
Trust Officer
Frost Wealth Advisors

Frost Bank is a subsidiary of Cullen/Frost Bankers Inc. NYSE Symbol: CFR,  a Texas financial services company offering banking, investments, and insurance.

**EXHIBIT "B"**

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          11-08-2021
**ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)**
NOTICE:  Not For Use For Condominium Transactions



**1. PARTIES:** The parties to this contract are The Thomas H Dungan & Suzanne B Dungan 2016 Living Trust
(Seller) and ___Charles Mitelhaus and/or approved assignee_____ (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined
below.

**2. PROPERTY:** The land, improvements and accessories are collectively referred to as the
Property (Property).
  A. LAND: Lot _____ Block 10 _____ , Buena Vista _____
     Addition, City of Marfa _____ , County of Presidio County _____ ,
     Texas, known as 1104 North Alamito Street _____ 79843 _____,
     (address/zip code), or as described on attached exhibit.  *See attached Exhibit "A"*
  B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the
     above-described real property, including without limitation, the following **permanently installed
     and built-in items,** if any: all equipment and appliances, valances, screens, shutters,
     awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television
     antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units,
     security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water
     softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery,
     landscaping, outdoor cooking equipment, and all other property attached to the above
     described real property.
  C. ACCESSORIES:   The following described related accessories, if any: window air conditioning
     units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods,
     door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance
     accessories, artificial fireplace logs, security systems that are not fixtures, and controls for:  (i)
     garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes
     Seller's transferable rights to the (i) software and applications used to access and control
     improvements or accessories, and (ii) hardware used solely to control improvements or
     accessories.
  D. EXCLUSIONS: The following improvements and accessories will  be  retained  by  Seller  and
     must be removed prior to delivery of possession: _____ *none* _____
     _____ .
  E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other
     interests is made in accordance with an attached addendum.

**3. SALES PRICE:**
  A. Cash portion of Sales Price payable by Buyer at closing .........................$ 825,000 ____
  B. ~~Sum of all financing described in the attached:~~ ❏   ~~Third Party Financing Addendum,~~
     ❏   ~~Loan Assumption Addendum,~~ ❏   ~~Seller Financing Addendum~~ ..........$ ____ *na* ____
  C. Sales Price (Sum of A and B) .............................................................$ 825,000 ____

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting
the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a
new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable
boxes)
❏ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the
   Addendum Regarding Residential Leases is attached to this contract.
❏ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for
   example, solar panels, propane tanks, water softener, security system) and the Addendum
   Regarding Fixture Leases is attached to this contract.
❏ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas,
   mineral, water, wind, or other natural resource lease affecting the Property to which Seller is  a
   party.
  ❏ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.
  ❏ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases.  Seller shall
     provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective
     Date. Buyer may terminate the contract within _____ days  after  the  date  the  Buyer
     receives all the Natural Resource Leases and the earnest money shall be refunded to
     Buyer.

Initialed for identification by Buyer [initials] and Seller [initials]         TREC NO. 20-16

Contract Concerning 1104 North Alamito Street, Marfa, TX 79843                   Page 2 of 11   11-08-2021
                              (Address of Property)

## 5. EARNEST MONEY ~~AND TERMINATION OPTION~~:

A. DELIVERY OF EARNEST MONEY ~~AND OPTION FEE: Within 3 days after the Effective Date~~, Buyer
   has delivered to ___Ultra Escrow_____, ~~as escrow agent, at~~ _____
   ~~as earnest money and $~~                                (address): $ __100,000.00___
   _____na_____ ~~as the Option Fee~~. The earnest money ~~and Option
   Fee~~ shall be made payable to escrow agent ~~and may be paid separately or combined in a single
   payment.~~  *See Supplemental Addendum*
   (1) Buyer shall deliver additional earnest money of $__N/A_____ ‡to *Alaina Johnston/*
       within _2 (two)_ days after the Effective Date of this contract.  *Preserve Title*
   (2) If the last day to deliver the earnest money, ~~Option Fee, or the~~ additional earnest money
       falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, ~~Option
       Fee, or the~~ additional earnest money, as applicable, is extended until the end of the next
       day that is not a Saturday, Sunday, or legal holiday.
   (3) The amount(s) escrow agent receives under this paragraph shall be applied ~~first to the
       Option Fee, then~~ to the earnest money, and then to the additional earnest money.
   (4) ~~Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time
       without further notice to or consent from Buyer, and releases escrow agent from liability for
       delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at
       closing.~~
B. ~~TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges,
   and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the
   unrestricted right to terminate this contract by giving notice of termination to Seller within
   __n a__ days after the Effective Date of this contract (Option Period). Notices under this
   paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date
   specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will
   not be refunded and escrow agent shall release any Option Fee remaining with escrow agent to
   Seller; and (ii) any earnest money will be refunded to Buyer.~~
C. FAILURE TO TIMELY DELIVER EARNEST MONEY:  If Buyer fails to deliver the earnest money
   within the time required, Seller may terminate this contract or exercise Seller's remedies under
   Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.
D. ~~FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if
   Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the
   unrestricted right to terminate this contract under this paragraph 5.~~
E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for
   performance is required.**

## 6. TITLE POLICY AND SURVEY:

A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of
   title insurance (Title Policy) issued by  *Preserve Title*        (Title Company) in the amount
   of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions
   of the Title Policy, subject to the promulgated exclusions (including existing building and
   zoning ordinances) and the following exceptions:
   (1) Restrictive covenants common to the platted subdivision in which the Property is located.
   (2) The standard printed exception for standby fees, taxes and assessments.
   (3) ~~Liens created as part of the financing described in Paragraph 3.~~
   (4) Utility easements created by the dedication deed or plat of the subdivision in which the
       Property is located.
   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by
       Buyer in writing.
   (6) The standard printed exception as to marital rights.
   (7) The standard printed exception as to waters, tidelands, beaches, streams, and related
       matters.
   (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary
       lines, encroachments or protrusions, or overlapping improvements:
       ☐ (i) will not be amended or deleted from the title policy; or
       ☒ (ii) will be amended to read, "shortages in area" at the expense of ☒ Buyer  ☐ Seller.
   (9) The exception or exclusion regarding minerals approved by the Texas Department of
       Insurance.
B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller
   shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense,
   legible copies of restrictive covenants and documents evidencing exceptions in the Commitment
   (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title
   Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address
   shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to
   Buyer within the specified time, the time for delivery will be automatically extended up to 15
   days or 3 days before the Closing Date, whichever is earlier. ~~If the Commitment and Exception
   Documents are not delivered within the time required, Buyer may terminate this contract and
   the earnest money will be refunded to Buyer.~~

Initialed for identification by Buyer [initials]  and Seller [initials]         TREC NO. 20-16

Contract Concerning <u>1104 North Alamito Street, Marfa, TX 79843</u>                                    Page 3 of 11        11-08-2021
(Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

☒(1)~~Within _____ days after the Effective Date of this contract,~~ Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). ~~**If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.**~~ If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐Seller's ☒Buyer's expense no later than 3 days prior to Closing Date.

☐(2)Within <u>na</u> days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐~~(3)Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.~~

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: _____ <u>none</u> .
Buyer must object the earlier of (i) the Closing Date or (ii) ___<u>3</u>___ days after Buyer receives the Commitment, Exception Documents, ~~and the survey.~~ Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer ~~or any third party lender~~ within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐is ☒is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**
Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request. **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services,

Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.  An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code:  The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☑ (1) Buyer has received the Notice.
☐ (2) Buyer has not received the Notice.  Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

Contract Concerning <u>1104 North Alamito Street, Marfa, TX 79843</u>                    Page 5 of 11      11-08-2021
(Address of Property)

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title ~~and the warranties in this contract~~. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, ~~from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any~~.
   (Check one box only)
☑ (1) Buyer accepts the Property As Is.
☐ (2) ~~Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments:~~  __na__
   (Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. ~~LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.~~

F. ~~COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.~~

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company. ~~If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $~~ __na__ ~~.~~ Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

**8. BROKERS AND SALES AGENTS:**

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____
   _____.

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before __March 20__, 20 __23__, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
   (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
   (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
   (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
   (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

Initialed for identification by Buyer _____ and Seller _____          TREC NO. 20-16

Contract Concerning <u>1104 North Alamito Street, Marfa, TX 79843</u>                                Page 6 of 11      11-08-2021
(Address of Property)

**10. POSSESSION:**
   A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒upon closing and funding ☐~~according to a temporary residential lease form promulgated by TREC or other written lease required by the parties.~~ Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
   B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
     (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
     (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

***See Supplemental Addendum***

**12. SETTLEMENT AND OTHER EXPENSES:**
   A. The following expenses must be paid at or prior to closing:
     (1)    Expenses payable by Seller (Seller's Expenses):
       (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; ~~one-half of escrow fee;~~ and other expenses payable by Seller under this contract.
       ~~(b) Seller shall also pay an amount not to exceed $~~ *na* ~~to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.~~
     (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
   B. ~~If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess.~~ Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the

---

Initialed for identification by Buyer [ ] and Seller [ ]                     TREC NO. 20-16

Contract Concerning ___1104 North Alamito Street, Marfa, TX 79843_____ Page 7 of 11   11-08-2021
(Address of Property)

amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If ~~any part of~~ the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract ~~and receive the earnest money as liquidated damages~~, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not  resolved  through  informal  discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.
B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.
C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. ~~If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default.   Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back-up offers.~~

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the

| Initialed for identification by Buyer | [signature] | and Seller | [signature] | TREC NO. 20-16 |

Contract Concerning <u>1104 North Alamito Street, Marfa, TX 79843</u>                Page 8 of 11      11-08-2021
(Address of Property)

Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

**To Buyer at:** _____

**To Seller at:** 31 Intervale Rd

_____   Cranston, RI 02910

Phone: _____   Phone:   (830) 387-9238

E-mail/Fax: _____   E-mail/Fax: Suzannewynn@gmail.com

E-mail/Fax: _____   E-mail/Fax: _____

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum

☐ Seller Financing Addendum

☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Addendum Regarding Residential Leases

☐ Addendum Regarding Fixture Leases

☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☒ Other (list): _*Supplemental Addendum*_
_____
_____
_____

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: _____

Phone: _____   Phone: _____

Fax: _____   Fax: _____

E-mail: _____   E-mail: _____

Initialed for identification by Buyer _____ _____ and Seller _____ _____      TREC NO. 20-16

Contract Concerning 1104 North Alamito Street, Marfa, TX 79843        Page 9 of 11    11-08-2021
                               (Address of Property)

**EXECUTED the** ___21st___ **day of** ___February___, **20** _23_ **(Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

Buyer

*Charles Mitelhaus and/or approved assignee*

Seller — *Suzanne N Wynn*

*The Thomas H. Dungan and Suzanne B. Dungan 2016*
*Living Trust, by Suzanne N. Wynn, its Trustee*

Buyer

Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-16. This form replaces TREC NO. 20-15.

TREC NO. 20-16

Contract Concerning 1104 North Alamito Street, Marfa, TX 79843                     Page 10 of 11     11-08-2021
_____
(Address of Property)

---

### BROKER INFORMATION
### (Print name(s) only. Do not sign.)

| Pinnacle Real Estate Advisors | FA10091193 | Kuper Sotheby's International Realty | 579589 |
|---|---|---|---|
| Other Broker Firm | License No. | Listing Broker Firm | License No. |

represents ☑ Buyer only as Buyer's agent         represents ☑ Seller and Buyer as an intermediary
        ☐ Seller as Listing Broker's subagent              ☑ Seller only as Seller's agent

| Charles Mitelhaus II | FA100091193 | Lauren Meader Fowlkes | 531128 |
|---|---|---|---|
| Associate's Name | License No. | Listing Associate's Name | License No. |

| Team Name | | Team Name | |
|---|---|---|---|

| Cmitelhaus@pinnaclerea.com | 303-881-4291 | lauren.meaderfowlkes@kupersir.com | 432-295-2849 |
|---|---|---|---|
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |

| | | Ed Zapata | 561831 |
|---|---|---|---|
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |

| One Broadway, Suite A300 | | 6606 N New Braunfels Avenue | 210-822-86022. |
|---|---|---|---|
| Other Broker's Address | Phone | Listing Broker's Office Address | Phone |

| Denver | CO | 80203 | San Antonio, TX 78209 | | |
|---|---|---|---|---|---|
| City | State | Zip | City | State | Zip |

| | | Selling Associate's Name | License No. |
|---|---|---|---|

| | | Team Name | |
|---|---|---|---|

| | | Selling Associate's Email Address | Phone |
|---|---|---|---|

| | | Licensed Supervisor of Selling Associate | License No. |
|---|---|---|---|

| | | Selling Associate's Office Address | |
|---|---|---|---|

| | | City | State | Zip |
|---|---|---|---|---|

Disclosure: Pursuant to a previous, separate agreement (such as a MLS offer of compensation or other agreement between brokers), Listing Broker has agreed to pay Other Broker a fee ( 2.5% of Sales Price ). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

TREC NO. 20-16

Contract Concerning <u>1104 North Alamito Street, Marfa, TX 79843</u>                                    Page 11 of 11     11-08-2021
(Address of Property)

---

### OPTION FEE RECEIPT

~~Receipt of $.00~~                        ~~(Option Fee) in the form of~~ _____
~~is acknowledged.~~

| |
| --- |
| |

~~Escrow Agent~~                                                                                                Date

---

### EARNEST MONEY RECEIPT

Receipt of $.00 _____ Earnest Money in the form of _____
is acknowledged.

Escrow Agent                        Received by      Email Address                        Date/Time

Address                                                                              Phone

City                                   State                        Zip                        Fax

---

### CONTRACT RECEIPT

Receipt of the Contract is acknowledged.                                          2/21/23

| *Pam for Alaina Johnston* | AlamoHeights@preservetitle.com |
| --- | --- |

Escrow Agent                        Received by      Email Address                        Date

Address          Preserve Title Company LLC                  210.945.3370 x2
                 6606 N. New Braunfels, Suite 106                              Phone
City             San Antonio, TX 78209-4618    State          210.564.2916      Fax

---

### ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $.00 _____ additional Earnest Money in the form of _____
is acknowledged.

Escrow Agent                        Received by      Email Address                        Date/Time

Address                                                                              Phone

City                                   State                        Zip                        Fax

---

TREC NO. 20-16

**SUPPLEMENTAL ADDENDUM TO ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE) DATED AS OF FEBRUARY 16, 2023, BETWEEN THE THOMAS H. DUNGAN AND SUZANNE B. DUNGAN 2016 LIVING TRUST, AS SELLER, AND** <u>Charles Mitelhaus and/or approved assignee</u> **, AS BUYER**

1. <u>Supplemental Addendum Provisions Prevail</u>. This Supplemental Addendum (the "*Addendum*") modifies the One to Four Family Residential Contract (Resale) (the "*Contract*"). In the event of any conflict between any of the provisions of the Contract and/or this Addendum, this Addendum shall be deemed to be paramount and shall prevail.

2. <u>Definitions</u>. All capitalized terms used in this Addendum which are not defined in this Addendum shall have the meanings ascribed to them in the Contract.

3. <u>Buyer's Premium</u>. In addition to the accepted high bid for the Property acknowledged by the auctioneer Concierge Auctions, LLC dba Sotheby's Concierge Auctions ("*SCA*") at auction (the "*High Bid*"), Buyer shall pay a fee at Closing to SCA in an amount equal to twelve percent (12%) of the High Bid (the "*Buyer's Premium*"). Upon Closing, Buyer irrevocably directs Escrow Holder to hold such funds and to pay SCA the Buyer's Premium. To the extent that the Buyer's Premium is less than the Minimum Fee referenced in the Auction Agreement between Seller and SCA, Seller shall be required to pay to SCA the difference between the Buyer's Premium and the Minimum Fee and irrevocably directs Escrow Holder to hold such funds and to pay such funds to SCA upon Closing.

4. <u>Starting Bid Incentive Credit</u>. If applicable, as determined by Buyer's Bidder Terms and Conditions registration form submitted by Buyer to SCA prior to commencement of the Auction, SCA will provide to Buyer at Closing a Starting Bid Incentive Credit against the Buyer's Premium for the Property in the amount of six percent (6%) of the applicable Starting Bid.

5. <u>Earnest Money</u>. Buyer shall deliver, as its initial earnest money deposit, an amount equal to twelve percent (12%) of the total purchase price for the Property, less the bidder's deposit of ONE HUNDRED THOUSAND ($100,000.00) US DOLLARS submitted prior to the auction (the "*Deposit*"). In no event shall Buyer's Deposit equal less than ONE HUNDRED THOUSAND ($100,000.00) US DOLLARS. The Deposit shall be wired to Preserve Title, attn: Alaina Johnston for receipt no later than 5:00 p.m. ET on the second business day after the conclusion of the auction. Buyer is aware and acknowledges that upon execution of the Contract, the Deposit becomes Non-Refundable.

6. <u>Title Insurance/Certain Closing Costs</u>. Big Bend Title, LLC shall act as the title insurance issuer (the "*Title Company*") and Preserve Title shall act as the closing agent for this transaction (or "*Closing Agent*"). The Seller shall pay for the title search and a standard owner's title insurance policy. Except as expressly provided otherwise in the Contract, all other closing costs, including but not limited to deed, conveyance or transfer taxes, shall be paid by Buyer unless contrary to applicable law. In the event Buyer chooses to order title through a title company other than the company designated by Seller or to order broader ALTA coverage, Buyer shall be solely responsible for the costs of such title search and title insurance and/or for the incremental costs for broader ALTA coverage.

7. <u>Acceptance of Property</u>. To the fullest extent permitted by applicable law, Buyer accepts the Property in its "AS IS, WHERE IS, WITH ALL FAULTS" condition at the time of Closing. Buyer acknowledges that it has had the opportunity to conduct all due diligence and investigation of the Property (including but not limited to title, survey, insurability, feasibility, and physical condition) that it desires prior to signing this Contract. Buyer acknowledges that this transaction is not subject to any financing contingency or any

Buyer's Initials ( ___ ) ( ___ )                                     Seller's Initials ( ___ ) ( ___ )
Page 1

other contingency or inspection rights and that Buyer waives all right to rescind or cancel the Contract to the fullest extent allowed under applicable law.

8. <u>Disclosures</u>. To the extent that Seller is obligated to deliver disclosures or other documents to Buyer by law or under the Contract, Buyer acknowledges having received all such disclosures and documents prior to the auction of the Property and/or waives the right to such disclosures, to the fullest extent allowed under applicable law. Buyer waives all rights to rescind the Contract or to pursue remedies or penalties against Seller (including repairs) under applicable law.

9. **<u>Default</u>. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT, IF BUYER IS IN DEFAULT, THE DEPOSIT SHALL BE RETAINED BY SELLER AND BY SCA PER THE TERMS OF THE AUCTION AGREEMENT BETWEEN SELLER AND SCA AND THE BIDDER TERMS AND CONDITIONS BETWEEN BUYER AND SCA, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. BUYER SHALL BE RESPONSIBLE FOR THE PAYMENT OF ANY REMAINING BUYER'S PREMIUM TO SCA, AND SELLER MAY RECOVER SUCH DAMAGES AS MAY BE PROPER; OR SELLER MAY ELECT TO TREAT THIS CONTRACT AS BEING IN FULL FORCE AND EFFECT AND SELLER SHALL HAVE THE RIGHT TO SPECIFIC PERFORMANCE OR DAMAGES OR BOTH.**

10. <u>Third-Party Beneficiary</u>. Seller and Buyer designate SCA as a third-party beneficiary of this Contract, having the right to enforce any of the provisions that pertain to SCA.

11. <u>Severability</u>. Whenever possible, each provision of the Contract and this Addendum shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of the Contract is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of the Contract.

**IN WITNESS WHEREOF**, Seller and Buyer have signed this Addendum as of the day and year first above written.

SELLER:
**THE THOMAS H. DUNGAN AND
SUZANNE B. DUNGAN 2016 LIVING TRUST**

*Suzanne N Wynn*
_____
By: Suzanne N. Wynn, its Trustee

BUYER:

_____
Charles Mitelhaus and/or approved assignee

Buyer's Initials ( ____ ) ( ____ )

Seller's Initials ( ____ ) ( ____ )

Doc ID: 226509608b8f1f8507f8d4730d493bbc7b02936f6a8b1b

# EXHIBIT "A"

## LEGAL DESCRIPTION

Legal description of the land:

Lots One (1), Two (2), Three (3), Four (4), Ten (10), Eleven (11) and Twelve (12), Block Ten (10), BUENA VISTA ADDITION, located in the Town of Marfa, Presidio County, Texas, according to the Plat of said subdivision filed in Volume 44, Page 10, Plat Records of Presidio County, Texas.

dotloop signature verification: dtlp.us/0V8z-ACtR-Pooi

## TEXAS REALTORS

# SELLER'S DISCLOSURE NOTICE
©Texas Association of REALTORS®, Inc. 2019

Section 5.008, Property Code requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice to a buyer on or before the effective date of a contract. **This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.**

CONCERNING THE PROPERTY AT <u>1104 North Alamito Street, Marfa, TX 79843</u>

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller ☐ is ☑ is not   occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property? ☑ May 06, 2022   02 / 08 / 2023   _____ (approximate date) or   ☐ never occupied the Property

**Section 1. The Property has the items marked below: (Mark Yes (Y), No (N), or Unknown (U).)**
*This notice does not establish the items to be conveyed. The contract will determine which items will & will not convey.*

| Item | Y | N | U |
|---|---|---|---|
| Cable TV Wiring | ☑ | ☐ | ☐ |
| Carbon Monoxide Det. | ☐ | ☐ | ☑ |
| Ceiling Fans | ☑ | ☐ | ☐ |
| Cooktop | ☐ | ☑ | ☐ |
| Dishwasher | ☑ | ☐ | ☐ |
| Disposal | ☑ | ☐ | ☐ |
| Emergency Escape Ladder(s) | ☐ | ☑ | ☐ |
| Exhaust Fans | ☑ | ☐ | ☐ |
| Fences | ☑ | ☐ | ☐ |
| Fire Detection Equip. | ☑ | ☐ | ☐ |
| French Drain | ☐ | ☐ | ☑ |
| Gas Fixtures | ☐ | ☑ | ☐ |
| Natural Gas Lines | ☑ | ☐ | ☐ |

| Item | Y | N | U |
|---|---|---|---|
| Liquid Propane Gas: | ☐ | ☐ | ☑ |
| -LP Community (Captive) | ☐ | ☐ | ☑ |
| -LP on Property | ☐ | ☐ | ☑ |
| Hot Tub | ☐ | ☑ | ☐ |
| Intercom System | ☐ | ☑ | ☐ |
| Microwave | ☐ | ☑ | ☐ |
| Outdoor Grill | ☐ | ☑ | ☐ |
| Patio/Decking | ☑ | ☐ | ☐ |
| Plumbing System | ☑ | ☐ | ☐ |
| Pool | ☐ | ☑ | ☐ |
| Pool Equipment | ☐ | ☑ | ☐ |
| Pool Maint. Accessories | ☐ | ☑ | ☐ |
| Pool Heater | ☐ | ☑ | ☐ |

| Item | Y | N | U |
|---|---|---|---|
| Pump: ☐ sump ☐ grinder | ☐ | ☐ | ☑ |
| Rain Gutters | ☐ | ☐ | ☑ |
| Range/Stove | ☑ | ☐ | ☐ |
| Roof/Attic Vents | ☐ | ☐ | ☑ |
| Sauna | ☐ | ☑ | ☐ |
| Smoke Detector | ☑ | ☐ | ☐ |
| Smoke Detector – Hearing Impaired | ☐ | ☐ | ☑ |
| Spa | ☐ | ☑ | ☐ |
| Trash Compactor | ☐ | ☑ | ☐ |
| TV Antenna | ☐ | ☑ | ☐ |
| Washer/Dryer Hookup | ☑ | ☐ | ☐ |
| Window Screens | ☑ | ☐ | ☐ |
| Public Sewer System | ☑ | ☐ | ☐ |

| Item | Y | N | U | Additional Information |
|---|---|---|---|---|
| Central A/C | ☐ | ☑ | ☐ | ☐ electric ☐ gas    number of units: |
| Evaporative Coolers | ☐ | ☑ | ☐ | number of units: |
| Wall/Window AC Units | ☑ | ☐ | ☐ | number of units: 4 |
| Attic Fan(s) | ☐ | ☑ | ☐ | if yes, describe: |
| Central Heat | ☐ | ☑ | ☐ | ☐ electric ☐ gas    number of units: |
| Other Heat | ☑ | ☐ | ☐ | if yes describe: 4 |
| Oven | ☐ | ☑ | ☐ | number of ovens:        ☐ electric ☐ gas ☐ other: |
| Fireplace & Chimney | ☑ | ☐ | ☐ | ☐ wood   ☐ gas logs ☐ mock  ☐ other: |
| Carport | ☑ | ☐ | ☐ | ☐ attached ☐ not attached |
| Garage | ☐ | ☑ | ☐ | ☐ attached ☐ not attached |
| Garage Door Openers | ☐ | ☑ | ☐ | number of units:        number of remotes: |
| Satellite Dish & Controls | ☑ | ☐ | ☐ | ☐ owned  ☐ leased from |
| Security System | ☐ | ☑ | ☐ | ☐ owned  ☐ leased from |
| Solar Panels | ☐ | ☑ | ☐ | ☐ owned  ☐ leased from |
| Water Heater | ☑ | ☐ | ☐ | ☐ electric ☐ gas ☐ other:        number of units: 2 |
| Water Softener | ☑ | ☐ | ☐ | ☐ owned  ☐ leased from |
| Other Leased Item(s) | ☐ | ☐ | ☐ | if yes, describe: |

(TXR-1406) 09-01-19      Initialed by: Buyer: _____ _____ and Seller: _____ _____      Page 1 of 6

dotloop signature verification: dtlp.us/0V8z-ACtR-Pool

Concerning the Property at 1104 North Alamito Street, Marfa, TX 79843

| Underground Lawn Sprinkler | ☐ | ☑ | ☐ | ☐ automatic  ☐ manual   areas covered: |
|---|---|---|---|---|
| Septic / On-Site Sewer Facility | ☐ | ☑ | ☐ | ☐ if yes, attach Information About On-Site Sewer Facility (TXR-1407) |

Water supply provided by:  ☑ city  ☐ well  ☐ MUD  ☐ co-op  ☐ unknown  ☐ other: _____

Was the Property built before 1978?  ☐ yes  ☑ no  ☐ unknown
   (If yes, complete, sign, and attach TXR-1906 concerning lead-based paint hazards).
Roof Type: Metal _____ Age: 15 years _____ (approximate)
Is there an overlay roof covering on the Property (shingles or roof covering placed over existing shingles or roof covering)?  ☐ yes  ☑ no  ☐ unknown

Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are need of repair?  ☐ yes  ☑ no   If yes, describe (attach additional sheets if necessary): _____

_____

_____

**Section 2.  Are you (Seller) aware of any defects or malfunctions in any of the following?  (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Item | Y | N | Item | Y | N | Item | Y | N |
|---|---|---|---|---|---|---|---|---|
| Basement | ☐ | ☑ | Floors | ☐ | ☑ | Sidewalks | ☐ | ☑ |
| Ceilings | ☐ | ☑ | Foundation / Slab(s) | ☐ | ☑ | Walls / Fences | ☐ | ☑ |
| Doors | ☐ | ☑ | Interior Walls | ☐ | ☑ | Windows | ☐ | ☑ |
| Driveways | ☐ | ☑ | Lighting Fixtures | ☐ | ☑ | Other Structural Components | ☐ | ☑ |
| Electrical Systems | ☐ | ☑ | Plumbing Systems | ☐ | ☑ | Radiant Floor Heating System | ☑ | ☐ |
| Exterior Walls | ☐ | ☑ | Roof | ☐ | ☑ | | | |

If the answer to any of the items in Section 2 is yes, explain (attach additional sheets if necessary): Radiant heat is not working. There was a leak that was repaired. The system does not work. No other damage was noted after repair.

_____

**Section 3.  Are you (Seller) aware of any of the following conditions?  (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Condition | Y | N | Condition | Y | N |
|---|---|---|---|---|---|
| Aluminum Wiring | ☐ | ☑ | Radon Gas | ☐ | ☑ |
| Asbestos Components | ☐ | ☑ | Settling | ☐ | ☑ |
| Diseased Trees: ☐ oak wilt ☐ | ☐ | ☑ | Soil Movement | ☐ | ☑ |
| Endangered Species/Habitat on Property | ☐ | ☑ | Subsurface Structure or Pits | ☐ | ☑ |
| Fault Lines | ☐ | ☑ | Underground Storage Tanks | ☐ | ☑ |
| Hazardous or Toxic Waste | ☐ | ☑ | Unplatted Easements | ☐ | ☑ |
| Improper Drainage | ☐ | ☑ | Unrecorded Easements | ☐ | ☑ |
| Intermittent or Weather Springs | ☐ | ☑ | Urea-formaldehyde Insulation | ☐ | ☑ |
| Landfill | ☐ | ☑ | Water Damage Not Due to a Flood Event | ☐ | ☑ |
| Lead-Based Paint or Lead-Based Pt. Hazards | ☐ | ☑ | Wetlands on Property | ☐ | ☑ |
| Encroachments onto the Property | ☐ | ☑ | Wood Rot | ☐ | ☑ |
| Improvements encroaching on others' property | ☐ | ☑ | Active infestation of termites or other wood destroying insects (WDI) | ☐ | ☑ |
| Located in Historic District | ☐ | ☑ | Previous treatment for termites or WDI | ☐ | ☑ |
| Historic Property Designation | ☐ | ☑ | Previous termite or WDI damage repaired | ☐ | ☑ |
| Previous Foundation Repairs | ☐ | ☑ | Previous Fires | ☐ | ☑ |
| Previous Roof Repairs | ☐ | ☑ | Termite or WDI damage needing repair | ☐ | ☑ |
| Previous Other Structural Repairs | ☐ | ☑ | Single Blockable Main Drain in Pool/Hot Tub/Spa* | ☐ | ☑ |
| Previous Use of Premises for Manufacture of Methamphetamine | ☐ | ☑ | | | |

(TXR-1406) 09-01-19     Initialed by: Buyer: _____ _____  and Seller: _____ _____     Page 2 of 6

Concerning the Property at <u>1104 North Alamito Street, Marfa, TX 79843</u>

If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary): _____

_____
_____
_____

*A single blockable main drain may cause a suction entrapment hazard for an individual.

**Section 4. Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice?** ☐ yes ☑ no   If yes, explain (attach additional sheets if necessary):_____

_____
_____

**Section 5. Are you (Seller) aware of any of the following conditions?* (Mark Yes (Y) if you are aware and check wholly or partly as applicable.  Mark No (N) if you are not aware.)**

Y  N
☐  ☑   Present flood insurance coverage (if yes, attach TXR 1414).

☐  ☑   Previous flooding due to a failure or breach of a reservoir or a controlled or emergency release of water from a reservoir.

☐  ☑   Previous flooding due to a natural flood event (if yes, attach TXR 1414).

☐  ☑   Previous water penetration into a structure on the Property due to a natural flood event (if yes, attach TXR 1414).

☐  ☑   Located ☐ wholly ☐ partly in a 100-year floodplain (Special Flood Hazard Area-Zone A, V, A99, AE, AO, AH, VE, or AR) (if yes, attach TXR 1414).

☐  ☑   Located ☐ wholly ☐ partly in a 500-year floodplain (Moderate Flood Hazard Area-Zone X (shaded)).

☐  ☑   Located ☐ wholly ☐ partly in a floodway (if yes, attach TXR 1414).

☐  ☑   Located ☐ wholly ☐ partly in a flood pool.

☐  ☑   Located ☐ wholly ☐ partly in a reservoir.

If the answer to any of the above is yes, explain (attach additional sheets as necessary): _____

_____
_____

*For purposes of this notice:

"100-year floodplain" means any area of land that: (A) is identified on the flood insurance rate map as a special flood hazard area, which is designated as Zone A, V, A99, AE, AO, AH, VE, or AR on the map; (B) has a one percent annual chance of flooding, which is considered to be a high risk of flooding; and (C) may include a regulatory floodway, flood pool, or reservoir.

"500-year floodplain" means any area of land that: (A) is identified on the flood insurance rate map as a moderate flood hazard area, which is designated on the map as Zone X (shaded); and (B) has a two-tenths of one percent annual chance of flooding, which is considered to be a moderate risk of flooding.

"Flood pool" means the area adjacent to a reservoir that lies above the normal maximum operating level of the reservoir and that is subject to controlled inundation under the management of the United States Army Corps of Engineers.

"Flood insurance rate map" means the most recent flood hazard map published by the Federal Emergency Management Agency under the National Flood Insurance Act of 1968 (42 U.S.C. Section 4001 et seq.).

"Floodway" means an area that is identified on the flood insurance rate map as a regulatory floodway, which includes the channel of a river or other watercourse and the adjacent land areas that must be reserved for the discharge of a base flood, also referred to as a 100-year flood, without cumulatively increasing the water surface elevation more than a designated height.

"Reservoir" means a water impoundment project operated by the United States Army Corps of Engineers that is intended to retain water or delay the runoff of water in a designated surface area of land.

  

dotloop signature verification: dtlp.us/0V8z-ACtR-Pool

Concerning the Property at 1104 North Alamito Street, Marfa, TX 79843

**Section 6.  Have you (Seller) ever filed a claim for flood damage to the Property with any insurance provider, including the National Flood Insurance Program (NFIP)?*** ☐ yes ☑ no  If yes, explain (attach additional sheets as necessary): _____

_____

*Homes in high risk flood zones with mortgages from federally regulated or insured lenders are required to have flood insurance. Even when not required, the Federal Emergency Management Agency (FEMA) encourages homeowners in high risk, moderate risk, and low risk flood zones to purchase flood insurance that covers the structure(s) and the personal property within the structure(s).

**Section 7.   Have you (Seller) ever received assistance from FEMA or the U.S. Small Business Administration (SBA) for flood damage to the Property?** ☐ yes ☑ no  If yes, explain (attach additional sheets as necessary): _____

_____

**Section 8.   Are you (Seller) aware of any of the following? (Mark Yes (Y) if you are aware.  Mark No (N) if you are not aware.)**

**Y  N**

☐ ☑  Room additions, structural modifications, or other alterations or repairs made without necessary permits, with unresolved permits, or not in compliance with building codes in effect at the time.

☐ ☑  Homeowners' associations or maintenance fees or assessments.  If yes, complete the following:
Name of association:_____
Manager's name: _____  Phone:_____
Fees or assessments are: $_____ per _____ and are: ☐ mandatory ☐ voluntary
Any unpaid fees or assessment for the Property?   ☐ yes ($_____ )  ☐ no
If the Property is in more than one association, provide information about the other associations below or attach information to this notice.

☐ ☑  Any common area (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others.  If yes, complete the following:
Any optional user fees for common facilities charged?   ☐ yes  ☐ no  If yes, describe: _____

☐ ☑  Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property.

☐ ☑  Any lawsuits or other legal proceedings directly or indirectly affecting the Property.  (Includes, but is not limited to: divorce, foreclosure, heirship, bankruptcy, and taxes.)

☐ ☑  Any death on the Property except for those deaths caused by: natural causes, suicide, or accident unrelated to the condition of the Property.

☐ ☑  Any condition on the Property which materially affects the health or safety of an individual.

☐ ☑  Any repairs or treatments, other than routine maintenance, made to the Property to remediate environmental hazards such as asbestos, radon, lead-based paint, urea-formaldehyde, or mold.
If yes, attach any certificates or other documentation identifying the extent of the remediation (for example, certificate of mold remediation or other remediation).

☐ ☑  Any rainwater harvesting system located on the Property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source.

☐ ☑  The Property is located in a propane gas system service area owned by a propane distribution system retailer.

☐ ☑  Any portion of the Property that is located in a groundwater conservation district or a subsidence district.
If the answer to any of the items in Section 8 is yes, explain (attach additional sheets if necessary): _____

_____

_____

dotloop signature verification: dtlp.us/0V8z-ACtR-Pooi

Concerning the Property at 1104 North Alamito Street, Marfa, TX 79843

**Section 9. Seller ☐ has ☑ has not attached a survey of the Property.**

**Section 10. Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and who are either licensed as inspectors or otherwise permitted by law to perform inspections? ☐ yes ☑ no** If yes, attach copies and complete the following:

| Inspection Date | Type | Name of Inspector | No. of Pages |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

*Note: A buyer should not rely on the above-cited reports as a reflection of the current condition of the Property. A buyer should obtain inspections from inspectors chosen by the buyer.*

**Section 11. Check any tax exemption(s) which you (Seller) currently claim for the Property:**
☑ Homestead          ☐ Senior Citizen          ☐ Disabled
☐ Wildlife Management          ☐ Agricultural          ☐ Disabled Veteran
☐ Other:_____          ☐ Unknown

**Section 12. Have you (Seller) ever filed a claim for damage, other than flood damage, to the Property with any insurance provider? ☐ yes ☑ no**

**Section 13. Have you (Seller) ever received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made? ☐ yes ☑ no** If yes, explain:_____

_____

**Section 14. Does the Property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766 of the Health and Safety Code?*** ☐ unknown ☐ no ☑ yes. If no or unknown, explain. (Attach additional sheets if necessary): _____

*Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information.*

*A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing-impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing-impaired and specifies the locations for installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.*

Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person, including the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information.

| *The Thomas H Dungan & Suzanne B Dungan 2016 Living Trust* <br> dotloop verified <br> 06/05/22 5:51 PM EDT <br> MNDM-4R9P-SEIT-D2C0 | | 02 / 08 / 2023 |
|---|---|---|
| Signature of Seller | Date | Signature of Seller                          Date |

Printed Name: The Thomas H Dungan & Suzanne B Dungan 2016 Living Trust

Printed Name: The Thomas H. Dungan and Suzanne B. Dungan 2016 Living Trust, by Suzanne N. Wynn, its Trustee

**ADDITIONAL NOTICES TO BUYER:**

(TXR-1406) 09-01-19          Initialed by: Buyer: [____] and Seller: [____]          Page 5 of 6

dotloop signature verification: dtlp.us/0V8z-ACtR-Pool

Concerning the Property at 1104 North Alamito Street, Marfa, TX 79843

(1) The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain zip code areas. To search the database, visit https://publicsite.dps.texas.gov/SexOffenderRegistry. For information concerning past criminal activity in certain areas or neighborhoods, contact the local police department.

(2) If the Property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the Property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required for repairs or improvements.  Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

(3) If the Property is located in a seacoast territory of this state designated as a catastrophe area by the Commissioner of the Texas Department of Insurance, the Property may be subject to additional requirements to obtain or continue windstorm and hail insurance.  A certificate of compliance may be required for repairs or improvements to the Property. For more information, please review *Information Regarding Windstorm and Hail Insurance for Certain Properties* (TXR 2518) and contact the Texas Department of Insurance or the Texas Windstorm Insurance Association.

(4) This Property may be located near a military installation and may be affected by high noise or air installation compatible use zones or other operations.  Information relating to high noise and compatible use zones is available in the most recent Air Installation Compatible Use Zone Study or Joint Land Use Study prepared for a military installation and may be accessed on the Internet website of the military installation and of the county and any municipality in which the military installation is located.

(5) If you are basing your offers on square footage, measurements, or boundaries, you should have those items independently measured to verify any reported information.

(6) The following providers currently provide service to the Property:

Electric: Just Energy                          phone #: 866-268-1975

Sewer: City of Marfa                           phone #: _____

Water: City of Marfa                           phone #: _____

Cable: Dish TV                                 phone #: _____

Trash: City of Marfa                           phone #: _____

Natural Gas: City of Marfa                     phone #: _____

Phone Company: _____            phone #: _____

Propane: _____            phone #: _____

Internet: ATT                                  phone #: _____

(7) This Seller's Disclosure Notice was completed by Seller as of the date signed.  The brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate.  YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.

The undersigned Buyer acknowledges receipt of the foregoing notice.

Signature of Buyer                  02 / 21 / 2023          Signature of Buyer
                                    Date                                                           Date

Printed Name:  Charles Mitelhaus and/or approved assignee    Printed Name: _____

Doc ID: ba376304cc665296